The Third Circuit has sworn high-tech and Judge Wise, who is in Pittsburgh, is with us by video. Joe, can you hear me? Good morning, yes, very well. Good morning, great. And you can see the lawyers, Joe, from where you are? Indeed I can. And can counsel see Judge Wise? Okay, then we're ready. The first case before us today is Subclass 2 of the Master Class. I'm not going to read the whole caption. Counsel, you can approach the bench. Good morning, Your Honors. My name is Phil Bach, and I represent Subclass 2 of the Master Class. I'd like to reserve five minutes for rebuttal. That's fine. Thank you. We're here today on the issue of the duty to defend governed by Pennsylvania law. We contend that the District Court erred by finding no duty to defend under property damage and alternatively erred by not finding a duty to defend under the advertising injury coverage. The duty to defend is broad in Pennsylvania. You have to speak a little louder and a little subtler because you have to be heard in Pittsburgh. I'm sorry. The duty to defend is a broad duty, and there are many cases in Pennsylvania state and federal courts about the duty to defend. In reference to Pennsylvania law, which all parties concede is applicable here, do we really need to predict Pennsylvania law here, as I believe the District Court suggested, or is it enough for us simply to apply principles of Pennsylvania insurance and coverage law that are already at stand? I think it's more of the second. There are so many insurance cases. I did not understand either you or the other side who have suggested a need to predict, and that's why I wanted to clarify. I guess the outcome predicted is how would the Supreme Court of Pennsylvania rule on this case or a case about this particular policy. Is that really a matter of prediction? I don't think it is. I think it is a matter of applying well-established insurance policy interpretation principles. The duty to defend in Pennsylvania is determined solely by comparing the insurance policy to the underlying complaint. It's called the eight corners test. You look at the policy and see what it covers. Then you look at the complaint to see if it alleges anything that potentially comes within coverage. If the complaint alleges facts that might support a recovery under the policy, the insurance company has to defend. The court must construe the allegations of the complaint liberally in favor of the policyholder and in favor of coverage. Given that, what provisions of the policy do you claim arguably cover what happened here? I must say that before this case, I didn't even know about this statute. Amazing. I'll tell people in the courtroom who may not know what I'm talking about, but why don't you tell them what the statute makes it unlawful to do? In 1991, Congress passed legislation, President Clinton signed it into law, saying that you cannot send junk faxes. A junk fax is an advertising fax that's sent without the permission or invitation of the recipient. Faxes are still legal. Advertising faxes are still legal. But you have to have the recipient's consent. So your client's agent, on behalf of your client, sent something like 265,000 faxes advertising the hotel's rooms and something like 163,000 were received. I don't know what happened to the rest of them, but they went somewhere, into limbo. Yes. The approval of the 163,000. Maybe it had some, but not all. Okay, so. And those are, you're stating true things from the record, but those are things outside the underlying complaint. All we have in the complaint is that the plaintiff says he got fax and he had not consented to give it. Let's talk about the complaint. What is the fact in the complaint? Because it's going to make a big difference to the parties here as to whether or not what occurred was intentional conduct or whether it was negligent conduct for purposes of the language of the policy, correct? Right. What facts are alleged in the complaint that Melrose negligibly assumed that it had permission to send the faxes? Well, I appreciate the question and the way I look at the issue. We aim to please you. That's what I'm trying to do. I look at the case law, and the case law tells me that the issue is whether the complaint pleads there's no coverage. If the complaint pleads the possibility of coverage, then there is coverage. And you look at the complaint and you say, under Pennsylvania law, is it alleging intentional injury? Is it alleging, you know, for property damage, we're saying that the property damage alleged? Well, all right, but that was not my question. My question is what are the facts alleged in the complaint? Sure. The fact that all it alleges is that the plaintiff received an advertising fax advertising the defendant's hotels, and he had not given consent, okay? It alleges that that violated the TCPA. It alleges that if the court finds the violation was knowing, then it should treble the damages. So if Melrose knowingly violated the statute, meaning knowingly sent faxes without people's consent, then the damages would be trebled. So by pleading that, it's also pleading that the ordinary statutory damages are negligence or recklessness. Is there no import to the should-have-known language that appears, I believe, in two places in the complaint and the amended? Yes, and that's the second point where it's pleading negligence. On the second two counts, it pleads the new or should-have-known. Should-have-known is the hallmark of pleading negligence, although there's no magic words. In Illinois, this complaint was filed in Illinois. Should-have-known is a pleading of negligence. But they should-have-known they didn't have the recipient's consent. And so the insurance company is arguing that when you read the complaint, you can only read it to say that Melrose intended to send faxes to people it knew had not given consent, and the complaint doesn't say that. The complaint is merely saying they got the complaint. It doesn't say— Is that really what the insurance company is saying? Are they simply saying Melrose intended to send the fax? Well, that's partially what they're saying, and we argue that that's not the correct Pennsylvania legal standard. It's not whether they intended the conduct, it's whether they intended the insult. Intended injury, intended damage. And we cited some cases about where the issue is the insurer's understanding or intentions regarding the consent of the alleged victim. If the alleged victim has consented, there is no injury or damage. If, in fact, the plaintiff had given permission to receive faxes and was lying in the complaint, or if the plaintiff had an established business relationship, which is a defense in the statute to sending junk faxes, if you have this relationship, you can send them. If those things were there, then there was no intentional injury. Mr. Baumgartner, help me. Okay. The policy excludes intentional acts. Is that right? Coverage. Well, what it excludes under the case law is it excludes injury that's intended. The language of the policy. What is the exclusion? Intentional injury or damage. Okay. Now, can anyone believe that sending a fax is not an intentional act? I don't think that that, and we argue that that's not the issue. That's my question. No, they intentionally sent them. It was an intentional act. They did not, the complaint does not plead they intentionally injured the recipients. They not only intended to send them. They intended to send them fully knowing that if they weren't using up paper, the faxes wouldn't be worth a damn, right? I mean, they fully intended the consequences of the act that they intended to do as well. Yes, they intended people to receive these faxes and to print them out on their fax machines, but there's no allegation that they did so knowing that the people had not given consent. A junk fax only causes damage if you haven't given consent. It's like the Bartholomew case. It's a Third Circuit case where it's basically a date rape case, and this court found coverage because the person had alleged that the defendant was reckless about whether the woman had given her consent to have intercourse. And so the act was intended, the results were intended, but whether there was an intentional injury was governed by whether the person had consented and whether the insured knew that he did not have consent or did he think he did have consent. And the issue is whether the underlying complaint pleads that the person didn't give consent. Mr. Bach? Yes, Your Honor. Mr. Bach? Yes. Was there not a settlement in this case? There was a settlement of the underlying case. Yes. So aren't you actually asking for indemnity here rather than simply a duty to defend? The district court ruled on the duty to defend and granted summary judgment with prejudice before the underlying case was reduced to judgment, so before the settlement. So the district court didn't rule on indemnity issues because they had not been, they weren't right at the time he ruled. If you don't have a duty to defend, you don't have a duty to defend the product? I see the amount of time I'd like to answer the question. Sure, go ahead and answer it. It is possible to have a duty to indemnify without a duty to defend because although the insurance company doesn't defend because the complaint doesn't allege the right kind of things, the judgment could find the right kind of things. The findings of the underlying case could result in coverage even though there was no duty to defend. So there could be a duty to indemnify here even without a duty to defend. Word is arguing the district court erred in saying there was not even a duty to defend. The duty to defend is broader than the duty to indemnify. Joe, do you have any more questions? No, if my colleagues would just indulge me. Absolutely. One question. We have time. We've addressed only the property damage issue here, but I would like to know with respect to the advertising injury issue, which you didn't get to, why we should not simply follow the reasoning of the Fourth Circuit and resource bank shares. The Fourth Circuit was applying Virginia law, and according to the Fourth Circuit, Virginia law is different from Pennsylvania law because according to them in Virginia, the issue is whether the act was intended. If the act was intended or the injury was intended. Pennsylvania says you only look at whether the injury was intended. Why does that impact on our construction of the making known language that appears in both policies, our policy and the resource bank shares policy, which are, as far as my recollection goes, almost identical? I'm sorry. I think I misunderstood your question. So on the advertising injury. I'm talking about the advertising injury, not the property damage. We argue that the Fourth Circuit was incorrect and they didn't apply. It doesn't apply here because if you use Pennsylvania principles of interpreting insurance policy to look at it in the way a common person would understand the terms, if you broadly construe the terms in favor of coverage, in favor of the policyholder, against the insurance company, then that phrase can apply to a claim that sending an advertisement that invaded a privacy right created by the TCPA is the equivalent of making known to any person covered material that violates a person's right to privacy. But the words are broad enough, and the Fourth Circuit narrowly construed the policy against coverage. Okay. You've saved one third of your time, so we'll get you back. Thank you, Your Honor. Thank you. Mr. Spivacek, am I pronouncing it right? Your Honor, you pronounced it exactly the way that it's spelled. But my father decided it sounded more Hoosier. I grew up in Indiana. If we had a two-syllable last name as opposed to a three-syllable last name. And so he pronounced it? Spivak, Your Honor. How many Spivaceks are there in Indiana? Spivak. Well, I understand. The phone book for Copenhagen, Indiana, was about like this, and there was one line with Spivak in it. Now, in Minnesota, where I live now, where there's a large check community, they call it New Prague. I would say New Prague. There are quite a few spent checks in Minnesota, so I'm not alone. May it please the court. Counsel, my name is Chuck Spivak. I represent the St. Paul Fire and Marine Insurance Company. I'd like to get directly to a couple of the questions that the judges asked during the presentation of my opponent. And particularly, Judge Weiss, I'd like to address your concern. This case really is now about indemnity. Procedurally, however, the posture is somewhat unique in that Judge Schiller ruled on the summary judgment motions before the underlying settlement, and thus the transference from the insured to the claimants officially took place. But the case caption now has been amended, and it's really the underlying claimants who are seeking collection of their indemnity. It makes really very little difference to this court's analysis because the court recognized that, in this case, the duty to defend by standard is broader than the duty to indemnify. And if there is no duty to defend, there can be no duty to indemnify. In this regard, I very much disagree with my opposition, and the law agrees with me. You can't have a situation where there's no duty to defend, but somehow on the basis of the same allegations, there would be a duty to indemnify. So since Judge Schiller, in effect, ruled on this case on the basis of the broader standard, there is no potential for coverage, thus there is no duty to defend. It goes that there is also no duty to indemnify. If he was right. If he was right. Thank you, Your Honor. Now, Judge Smith, I think you've picked up on exactly what the crux of this case is, and that is That would be about the first time. through the four corners of this complaint, allege a claim that would fall within the policy's coverage. And I also think you've focused on what my opposition claims is the key, the isolated allegations of knew or should have known. And I'm going to deal with those. Can I ask you a question? Of course. Do you agree with him that under Illinois law, an allegation of should have known is equivalent to negligence? I don't, Your Honor, and I also don't think it's relevant. Because Illinois law isn't going to govern the interpretation of this complaint. But even if it did, the allegation of should have known considered in isolation under Pennsylvania law that requires the allegations of the complaint be read in their entirety, and not so as to allow artful pleading to turn the meaning of what the facts are. A simple isolated allegation of should have known isn't going to be enough to make it a negligence case. But in this case, it goes beyond that. It goes beyond the fact that the allegations of should have known don't relate to the claims that determine whether there is coverage or not. That may be a little puzzling, but give me a moment to give the introduction to this, and then I'll answer your question directly. As with any insurance coverage case, you have to start with the language of the policy. And the policy starts, in this case, with the basic insuring the grant. That's where this dispute arises. Do they meet the basic insuring the grant? The basic insuring grant of the policy states that it will cover amounts the insured is legally required to pay for covered property damage. Okay, now this language has two components. There's the legal liability component, amounts the insured is legally required to pay, and there's the property damage component for covered property damage. Now, in this case, the appellants argued and the court agreed that the property damage component is met by the claim that the fax recipient's paper and ink was consumed, that that constitutes property damage. No, it's not the violation of the law that constitutes the property damage. It's the consumption of the fax recipient's paper and ink. And that's how it's pleaded. Absolutely, Your Honor. But the policy contains another requirement for there to be coverage. It's the property damage that must be caused by an event, which is defined in the policy as an accident. Note again, it's not the violation of the law that must result from an accident. It's the property damage that must be caused by an accident. And in this case, there is absolutely no question that the property damage complained of in this complaint was not covered by the policy because it was not caused by an accident. The policy speaks in terms of an event, doesn't it? And then goes on to define event as including an accident. That's correct, Your Honor. The allegations in this complaint clearly allege that facsimiles were sent on behalf of Melrose at its direction with its consent. It is undisputed that the consumption of the recipient's paper and ink is the natural and expected consequence of sending a facsimile. And this underlying complaint clearly alleged that the insured Melrose authorized the sending of the faxes and knew and expected that the faxes would be sent. Now, the new or should have known pleading has nothing to do with the allegations that it knew the faxes were going to be sent. Nor does it have anything to do with the logical conclusion that by knowing you're going to send a fax, the logical and expected consequence is that paper and ink on the other side is going to be consumed. The new or should have known language of this complaint had to do with the allegation of whether Melrose knew it was violating the law. But going back to the policy language again, remember two separate requirements. The legal liability requirement and the property damage requirement. It's not the legal liability that has to be caused by an event. It's the property damage that has to be caused by an event. Thus, the allegation that they knew or should have known they were violating the law is irrelevant to determine whether there is a duty to defend under a policy that says we will not cover property damage that's not caused by accident when compared to a complaint that says you absolutely knew that you were sending these faxes. You knew that in sending these faxes, you were going to misappropriate the receiver's fax machines, their papers, and their ink that's pledged in the underlying complaint. Mr. Spivak, excuse me for interrupting your presentation, but did I mishear Mr. Bach's statement that there was no allegation in the complaint that it was unauthorized? Because I've just looked at paragraph 24 in light of what you have just said that says defendant know or should have known, I guess it should be knew or should have known, that its appropriation of the paper and toner, what you call the property damage, and thereby shifting its advertising course to plaintiff and the class was wrongful and without authorization. So there is, I think, an allegation of lack of authorization. There is an allegation of lack of authorization. Did Mr. Bach say that there was no allegation that it was unauthorized? I'm not sure that I heard him say that, Your Honor. I'm sure he can speak for himself on the record and reflect that. So, Judge Smith, this is where these isolated allegations of knew or should have known really come into play, and they come into play in a manner that's completely irrelevant. The inquiry before this court is whether the property damage was caused by an accident, not whether the legal liability resulted from an accidental act. So to the extent the allegations of should have known or knew or should have known relate to whether the insured knew or should have known it was violating the law, it's an irrelevant consideration. The complaint is absolutely clear without equivocation and without contradiction that the insured intended to send the facsimiles and thus intended the natural and expected consequence of sending the facsimiles, that which is alleged as the property damage in this case, the consumption of the fax recipient's paper and toner. And in this regard, Judge Schiller got it exactly right in his opinion at the district court. He correctly announced that the appropriate rule of Pennsylvania law, which this court reiterated in its 1993 decision in Wiley v. State Farm, states that the question isn't whether the insured intended its actions. The question is whether the insured intended to cause the damage. He then absolutely correctly applied this well-settled rule of Pennsylvania law to the case before him, stating, quote, Melrose's knowledge about the TCPA and its lack of intent to violate the TCPA are irrelevant to whether it intended to cause the harm that befell the class members. Here, Melrose knew its actions would cause the very harm that the TCPA aims to prevent. Accordingly, no duty to defend arises under the policy's property damage provisions. Your Honor, the courts that have gotten the property damage argument right have thus correctly focused on whether the insured intended to cause the damage and not on whether the insured intended to violate the act. The Fourth Circuit in resource bank shares, the Seventh Circuit in American states, and the California Court of Appeals in the ACS case are all examples of courts who got the analysis correct. So what would you make of the language that appears in the complaint? I believe it is paragraph 19. If the evidence shows the violation was willful, plaintiff requests tripling of the damages. Doesn't that inferentially suggest that there are other allegata out there of negligence? Or does this fit entirely within the argument you've been making, that it's the violation that is willful, it's the violation that's intentional? It fits entirely within my argument, Your Honor, because my argument is the policy language requires that the property damage be caused by an accident. And in this case, if the property damage is the consumption of paper and ink, that wasn't accidental. And here, what plaintiff seems in the complaint to be averting is that it's the violation of law that's the willful act. That's correct. And, Your Honor, according to the policy language, which tracks Pennsylvania law focusing on the intent to cause the damage as opposed to the intent to act, that's essentially an irrelevant consideration, and Judge Schiller recognized that and pointed it out when he said it's irrelevant whether they intended to violate the act or not. And the allegations with regard to tripling damage have to do with a willful violation of the act, don't have to do with a willfully consuming someone else's paper and toner. That's the dichotomy. And what the appellants in this case would like to do would have you try to forget that there's a difference, blur the two together, and somehow transpose this policy into saying that instead of it being the property damage that has to be caused by accident, it's the violation of the TCPA that has to be accidental. And that's not either the law in Pennsylvania or what the policy says. And the three curves that I've cited as an example, the Fourth Circuit in Resource, the Seventh Circuit in American States, and recently the California Court of Appeals and ACS, all recognize this dichotomy. As Judge Easterbrook wrote in his opinion in the American States case, senders may be uncertain whether particular faxes violate the TCPA, but all senders know exactly how faxes duplicate recipients' consumables. What did the Illinois Supreme Court say about Judge Easterbrook's language in that? Nothing about the property damage argument, Your Honor. They applied Illinois' rules of construction to take policy language different than the policy language in the case of Barr and say that advertising injury applies. They took issue, really, with his advertising injury reasoning. They did, and in doing so, Your Honor, they rendered their opinion with Resource out there and with all the other cases out there involving exactly the policy that's in front of you. They couldn't ignore those cases, and so they distinguished them. Well, yeah, they didn't touch Resource Bank shares. They just said that this policy language could result in a different result, and that's exactly what we're asking this court to say. This policy language should be interpreted the way every single court has already interpreted it with regard to the advertising injury. Is there anything in the district court's opinion with which you disagree? Well, it sounds like I'm engaging a little hero worship here, Judge Shearer. No, I know, but it's an important issue for us. Your Honor, I have two minutes left, and there are some very esoteric things about Judge Shiller's analysis that only someone who spent 27 years doing insurance coverage work would at all think is material and totally unrelated to his holding. I'd be happy to spend my time. Judge Wise spent those 27 years doing insurance work. But with regard to those aspects of his opinion that make a difference coming to the right result, he did it as well as anyone has done it. Judge Shiller reached some issues that, from your standpoint, you would not have had to reach, I assume, to get to the same result, or to get the result. Well, he did, Your Honor, and I think this is an interesting point because the appellants in this case go to great lengths in their brief criticizing Judge Shiller for looking beyond the four corners of the complaint and making judgments in terms of whether the record supports their contention. That's one of the reasons I asked the question. That the facts were unsupported. But what they don't tell you in the briefs, but what Judge Shiller told you, and I'm convinced that this footnote was for your benefit. It wasn't for mine or for anybody else's. He says in his footnote, the analysis begins and ends with the four corners of the complaint. That's where the legal analysis stops. But Melrose has made a big deal in this case about how the record doesn't support the contention that it intended to violate the act. So I'm going to go ahead and point out to you where I disagree with them with regard to the record. Now that whole discussion of the record beyond the four corners of the complaint, you're right. It doesn't really have anything to do with his holding. It was in response to Melrose arguing that you should look beyond the four corners of the complaint to show that the evidence established a lack of intent to violate the act. And Judge Shiller is no dummy. He understood that this was a question this court was going to raise. And so he left you a road map in the footnote to his opinion where he says, I understand that the legal analysis stops with the four corners of the complaint. I'm including this as a demonstration, just to demonstrate that their contention about what's beyond the record is incorrect. But it doesn't weigh on the holding. With regard to advertising injury, Your Honors, I think you completely understand the issues. Every court that has interpreted this language has found it provides no coverage under rules of construction that are absolutely compatible with the rules that govern this court. There's no reason to come to a different result. Thank you. Thank you. Excuse me. Judge Wise, do you have any questions? No, thank you. Okay, thank you. You have five minutes for rebuttal. Thank you. The Tenth Circuit and the Eighth Circuit disagree with the district court in this case. The Tenth Circuit and the Eighth Circuit have both held that a lawsuit alleging junk faxes sent without consent of the recipient do allege property damage under a policy worded like this policy. Also, we submitted recently an opinion from Judge Abramson in the Philadelphia Court of Common Pleas in a case called Telecommunications Network Design v. Brethren. His opinion that under Pennsylvania law, a junk fax complaint does allege property damage and a duty to defend under a CGL policy worded like theirs. And in that opinion, he disagrees with the district court in this case explaining how Judge Schiller might be right when it's time for duty to indemnify. We'll find out if Melrose was negligent or not. But on the duty to defend, you can't read the complaint and say it alleges that Melrose was not negligent because it does allege negligence. The TCPA's strict liability statute, there's damage only when the fax is sent without consent. Damage sent with consent or a fax that's sent with consent doesn't cause damage or injury. But the allegation of the complaint is that it was sent without consent. I mean, they allege that in the complaint. Yes, and the question is whether they were negligent about whether they had authorization or not. It doesn't allege that they knew that they didn't have authorization. If we get into the record, the record shows that what they did was hire a third party who held itself out as having this database of fax numbers for travel agents. No, it does, excuse me, but paragraph 24 does allege that it was sent without authorization. Well, that it knew or should have known. It should have known without authorization is what we contend is an allegation of negligence. So to, that if you should have known you didn't have authorization, you were negligent about that. Just like this court has held that when somebody says you were reckless about whether you had consent, that's covered under the duty to defend. And we cited other cases where the issue, where there was only damage when there wasn't consent. So intentional acts like building a levee, dumping garbage, removing trees, building houses, they only cause damage when the alleged victim didn't consent. And if the policyholder was negligent about whether he had consent, whether he had permission, whether he had the proper variance, then he's alleging, then there's an allegation that the injury was negligently caused. The insurance company mentioned Wiley v. State Farm, which was a case of sexual abuse of a minor. And this court said that's always illegal, so you can't allege a negligent damage to a minor because it's always illegal. But in Bartholomew, this court said when it's not a minor, when it's an adult woman, and she's saying that the person was reckless about whether she gave consent to intercourse, that's an allegation that triggers the duty to defend. Let me take it back just a minute, solely so I'm satisfied that I understand your argument. Are you claiming that, and does your complaint allege, that Melrose knew or should have known that its intentional acts violated the TCP Act? No. That's what Mr. Spivak argues, as I understand his position. You are not saying that? The complaint does not say that. Well, the complaint is alleging that they violated the TCPA by sending faxes without consent. And it's a strict liability statute. So if they sent it by mistake, if they typed in the wrong fax number, that's a TCPA violation. They owe the guy $500, according to Congress. So they knew or should have known that what they were doing violated the TCPA? No, they didn't know or should have. They didn't know that the recipient had not given them consent. So if they sent it by mistake, if they sent it to the wrong person, it violates the TCPA. But they didn't intend to cause the recipient damage. They didn't intentionally damage the wrong person. It was a mistake. They always knew that a fax was going to use up paper and toner. Right. And that's part of the intention of the liability. A necessary result of the intention. The issue, as we see it, is that was it damage or injury versus was it toner or paper? It's only injury or damage if the recipient hadn't consented. If they have consented, there's no damage, even if they allege there is. Okay, your time is up. Thank you, Your Honor. Thank you. Joe, any questions? No, ma'am. Okay. Then we'll take this matter under advisement. Thank you, gentlemen. Thank you, Your Honor. It was well argued. Thank you. And we'll move on, as soon as we move our papers, to the next case, which is E&H Steel. And why don't we give them a chance to move out of the way. Okay. Trouble is, you know, we're still using the old system. Apparently the new one hasn't come. And so we can't see you. Is that better, Joe?         Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Okay. Somehow, before we used to get you on this little camera that's up in front of us. All right. So then if you want to ask a question, Joe, I can't see you if you raise your hand. So speak up, okay? The import of this is we have taken a step back in our technology, apparently. Well, apparently. We have the new video system on order. And something happened. It was supposed to be here by now, and it's not. That's what all that matters for our purposes. I'm basically a Luddite, so it doesn't really matter. Oh, it matters. Well, we're going to have the same problem tomorrow.